903 A.2d 1103

THE ESTATE OF GERTRUDE HAINTHALER, RICHARD HAINTHALER, INDIVIDUALLY, AND AS EXECUTOR OF THE LAST WILL AND TESTAMENT OF GERTRUDE HAINTHALER, PLAINTIFFS–APPELLANTS, v. ZURICH COMMERCIAL INSURANCE, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 6, 2006—Decided August 7, 2006.

320

Before Judges KESTIN, R.B. COLEMAN and SELTZER.

*Diane Marie Acciavatti,* argued the cause for appellants.

*James P. Lisovicz,* argued the cause for respondent (*Coughlin, Duffy, Kelly, Lisovicz, Midlige and Wolff, L.L.P.,* attorneys; *Mr. Lisovicz,* of counsel and *Joseph C. Amoroso,* on the brief).

The opinion of the court was delivered by

SELTZER, J.A.D.

Plaintiff[1] appeals from a summary judgment dismissing her complaint to compel defendant to participate in underinsured motorists (UIM) arbitration on the ground that it was filed beyond the six-year period of limitations the judge found applicable to the action. Because we believe the initial agreement of defendant to submit to arbitration requires that the motion to dismiss be analyzed with a view to considerations other than the statute of limitations, we reverse and remand for further proceedings.

The facts presented on defendant's motion for summary judgment were essentially uncontested. On December 27, 1997, Gertrude Hainthaler was injured by a vehicle insured under a policy with liability limits of $25,000. Ms. Hainthaler was insured under a policy issued to her son, plaintiff Richard Hainthaler, affording her $1,000,000 of UIM coverage. Defendant's predecessor was promptly notified of the accident and the possibility of a UIM claim. Defendant ultimately authorized a settlement with the tortfeasor on April 23, 1998. *See Rutgers Casualty Ins. Co. v. Vassas,* 139 *N.J.* 163, 171, 652 *A.*2d 162 (1995) (adopting the procedure described in *Longworth v. Van Houten,* 223 *N.J.Super.* 174, 538 *A.*2d 414 (App.Div.1988)).

Plaintiff entered a nursing home on January 11, 1999. At defendant's request, her counsel forwarded copies of her available medical records to defendant's counsel. Additional medical infor-

---

[1] Although the Estate of Gertrude Hainthaler and her son are both plaintiffs, the issues raised by this appeal relate entirely to Gertrude Hainthaler and the complaint of her son was dismissed without comment. Accordingly, for convenience, we treat the complaint as if brought by Gertrude Hainthaler, to whom we refer as "plaintiff."

mation was supplied by letters dated March 2, 1999, and April 19, 1999. Settlement negotiations with respect to the UIM claim failed and, on October 18, 1999, plaintiff's counsel notified defendant that "this office hereby appoints Anna M. Liuzzo, Esquire as its arbitrator. Kindly advise the name of your party-appointed arbitrator." On November 19, 1999, defense counsel responded: "This letter shall serve to advise you that Zurich hereby appoints Scott A. Parsons, Esquire as their arbitrator with regard to the above referenced under-insured motorist arbitration." The record does not reveal any action taken by the named arbitrators after their appointment.

Defendant asked for additional medical information in November 1999, December 1999, June 2000, and August 2000. The requests were accompanied by disclaimers that they were "without prejudice to any questions of coverage that may exist in this matter" and that defendant "reserve[d] the right to contest all coverage questions at a later time should they, in fact, arise[ ]." Defendant, however, never repudiated the agreement to arbitrate evidenced by its November 1999 letter appointing an arbitrator.

On August 22, 2000, defendant's counsel authored a letter to plaintiff's counsel, reminding her that defendant's discovery requests had gone unanswered. Counsel then advised that, "in light of the passage of time and the complete absence of any discovery or communication from your office, we will assume that your client does not wish to proceed with this matter and we will close out our file. If this is not accurate, please provide all the information so that we can proceed with this matter in an ordinary fashion." Plaintiff's counsel responded, on September 20, 2000, to advise that Ms. Hainthaler had died on September 12, 2000, and agreed to forward outstanding medical liens when received.

On February 26, 2001, defendant acknowledged receipt of the requested medical records and asked for a copy of the entire convalescent center file together with a death certificate. Counsel then added, "[f]inally, rather than selecting a three member panel of arbitrators, I would like to proceed by utilizing a retired judge

to review what is likely to be extensive medicals in this matter and hear the appropriate testimony. Would you kindly advise me if you would consent to proceed in that regard and whether you have any particular judge you would prefer to use." On March 29, 2001; May 3, 2001; and June 29, 2001, defendant sought further medical information.

Plaintiff did not respond to defendant's requests or communicate with defendant again until December 8, 2003, when plaintiff's counsel faxed a letter to defense counsel indicating she intended to pursue the claim and asking "if Zurich will honor said claim." She also advised defendant that "[i]n the event I do not hear from you by the end of this week, I will be forced to prepare an Order to Show Cause." In the same letter, plaintiff rejected the suggestion that the arbitration proceed before a judge rather than a panel.

On December 11, 2003, defense counsel wrote back, advising that the file had been closed and that he could not respond to the inquiry as to whether Zurich "will honor said claim" until he reviewed the file. Moreover, counsel advised that "I do not believe that an Order to Show Cause is appropriate until I have been able to review the file.... [I]f you insist on proceeding by way of order to show cause, I will request fees in light of the history of this action."

Plaintiff provided additional information by letter dated December 24, 2003, and, on January 23, 2004, defendant acknowledged receipt of that information, noting again the failure of plaintiff to provide other previously requested information. That letter suggested, for the first time, the possibility that "Zurich will assert the Statute of Limitations." On April 12, 2004, counsel for Zurich, in fact, asserted that the applicable statute of limitations barred plaintiff's claim.

On July 26, 2004, plaintiff filed a verified complaint, seeking a declaration that "Zurich is obligated to arbitrate" the UIM claim; to compel Zurich to submit to "underinsured motorists ... coverage arbitration;" to appoint a third arbitrator and schedule a hearing date; and fees together with any other appropriate relief.

On the date set for consideration of a proposed order to show cause, defendant asserted that the plaintiff's right to seek to compel arbitration was governed by the statute of limitations applicable to contract actions, *N.J.S.A.* 2A:14–1, and that the six-year statute began to run on the date of the accident. *See Green v. Selective Insurance Co. of America,* 144 *N.J.* 344, 354, 676 *A.*2d 1074 (1996).[2] Thus, defendant asserted, the time within which plaintiff might have filed suit expired on December 27, 2003, and the complaint was, therefore, filed some seven months too late. The plaintiff resisted that analysis. She claimed that "if [defendant] is going to raise [the statute of limitations], after they've investigated a claim and agreed to arbitrate it, that they have to tell us that [the defendant will invoke the statute of limitations]."

The judge focused on the possible entitlement of plaintiff to some relief from the statute, but acknowledged that defendant might have defenses other than the statute of limitations. She declined to issue summary relief, explaining:

The Court finds that there are fact disputes that surround the entitlement of the plaintiff to a waiver—to an—equitable tolling of the statute of limitations. That there are other defenses to the claim, such as the defense of failure to cooperate, the defense of unclean hands on the part of the plaintiffs in failing to-or at least, estoppel, laches in failing to proceed with the arbitration. That is going to require a trial.

The judge permitted some discovery to determine if defendant should be equitably estopped from asserting the statute, *see Price v. N.J. Mfrs. Ins. Co.,* 182 *N.J.* 519, 524–25, 867 *A.*2d 1181 (2005), and, presumably, to explore the other defenses she had identified.

---

[2] In this regard, the arbitration requirements of a contract of insurance relating to UIM arbitration differ from other contract-required arbitrations in which the cause of action accrues when a request for arbitration is met by a refusal from the other party. *See Ideal Mutual Ins. Co. v. Royal Globe Ins. Co.,* 211 *N.J.Super.* 336, 340, 511 *A.*2d 1205 (App.Div.1986) (cause of action to compel arbitration under statute requiring arbitration without specific time within which demand must be filed arises on denial of request); *Mitchell v. Alfred Hofmann, Inc.,* 48 *N.J.Super.* 396, 405, 137 *A.*2d 569 (App.Div.), *certif. denied,* 26 *N.J.* 303, 139 *A.*2d 589 (1958) (cause of action to enforce contractual right to arbitration arises on denial of request).

After discovery had been completed, defendant moved for judgment. The motion judge determined that the action to compel arbitration was time barred and that plaintiff was not entitled to relief from that bar. She explained:

Zurich did absolutely nothing at any point in time ... that [ ] justified the tolling of the Statute of Limitation. It's clear that the passage of time is solely the result of plaintiff failing to prosecute the claim. There was nothing done by Zurich at any point in time that would lead the plaintiff to believe that if the plaintiff continued to sit quiet on its claim and take no action, that the carrier would waive the Statute of Limitations defense.[3]

Since the suit to compel arbitration was initiated more than six years after the accident and since plaintiff was not entitled to relief from the applicable limitation period, the judge dismissed the suit.

Whether a particular cause of action is barred by a statute of limitations is determined by a judge rather than a jury. *See Lopez v. Swyer*, 62 *N.J.* 267, 275, 300 *A.*2d 563 (1973); *Fernandi v. Strully*, 35 *N.J.* 434, 449, 173 *A.*2d 277 (1961). The judge's determination of the legal consequences of established facts is not due any special deference from us. *See Manalapan Realty, L.P. v. Twp. Committee of Manalapan*, 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995). Accordingly, we review *de novo* the decision to dismiss.

We take, as our starting point, the nature of the claim that defendant asserts, and the judge found, was time barred. That claim was to compel defendant to arbitrate, pursuant to its contractual agreement. In fact, defendant had recognized its obligation pursuant to that agreement. Moreover, when it named an arbitrator, it had explicitly agreed to fulfill its contractual duty to

---

[3] The judge also dealt with a disputed conversation alleged to have taken place between plaintiff's then counsel and defense counsel in which plaintiff asserted that defendant waived the statute. The judge accepted the conversation as occurring but found it would not have tolled the statute beyond the date on which the complaint was filed. Given our resolution of this motion, we need not deal with the judge's treatment of that conversation.

arbitrate. It did not repudiate that agreement until April 12, 2004, more than six years after the date of the accident.

We recognize that on August 22, 2000, defendant did advise plaintiff that defendant would assume plaintiff did not wish to pursue the case unless it received a contrary response. However, plaintiff provided a response which included some of the requested discovery. Defendant acknowledged the response and, yet again, sought more discovery. Neither, the August 22, 2000, letter, nor later letters, to which plaintiff ultimately responded, constitute a repudiation of the agreement to arbitrate.

Plaintiff specifically advised defendant on December 8, 2003, that she intended to pursue the UIM claim and would file suit if defendant did not acknowledge that it "would honor this claim." Defendant replied, indicating an inability to respond without further review of the file and threatened to seek fees if suit were filed. Accordingly, as late as December 11, 2003, defendant had not repudiated its prior acknowledgment of its duty to arbitrate.

We, therefore, cannot agree with the judge's finding that Zurich had not led plaintiff to believe it would not assert the statute of limitations when the arbitration, in which it had begun to participate with the designation of an arbitrator, was not completed. The recognition of its duty to arbitrate, with no ensuing repudiation of the recognition, is tantamount to a declaration that plaintiff had timely begun the arbitration process. Plaintiff was entitled to rely upon defendant's announced recognition of its obligation.[4]

Our disagreement with the result below, however, is more fundamental than a difference of opinion respecting whether the statute of limitations should have been tolled. Rather, we believe

---

[4] The judge commented that even were the statute to have been tolled, the delay from plaintiff's first warning, on January 23, 2004, to the filing of the complaint on July 26, 2004, was unreasonably lengthy. We believe that the appropriate date from which to measure the delay in filing is April 12, 2004, the date on which defendant first asserted the statute. In either event, we believe the attempts to resolve the issues between counsel, not discussed by the motion judge, render the delay in filing reasonable.

that the analytic framework for resolving this question should not involve considerations of the statute of limitations at all.

■■■ The six-year statute of limitations with which we deal here, *N.J.S.A.* 2A:14–1, requires "that every action at law . . . for recovery upon a contractual claim . . . shall be commenced within 6 years next after the cause of any such action shall have accrued." The purpose of the statute "is to stimulate prompt action and to penalize negligence, while promoting repose by establishing stability in human affairs. Stated differently, the purpose of statutes of limitations is to protect defendants from unexpected enforcement of stale claims by plaintiffs who fail to use reasonable diligence in prosecuting their claims." *LaFage v. Jani,* 166 *N.J.* 412, 423, 766 *A.*2d 1066 (2001) (citation omitted).

Here the claim is not for compensation for injury pursuant to the contract of insurance. The venue for that claim is, initially, in arbitration and no statute of limitations deals with the diligence with which that claim must be pursued in that venue. Instead, the claim here is for compliance with a contractual agreement to arbitrate. The statute requires that this claim be pursued within six years of the date of the accident. Plaintiff diligently pursued that claim by demanding, and securing defendant's consent to, arbitration. The purpose of the statute was fulfilled as soon as defendant acceded to the arbitration demand.

■■ Statutes of limitation begin to run upon the "accrual" of a cause of action. *Ali v. Rutgers,* 166 *N.J.* 280, 286, 765 *A.*2d 714 (2000). Generally, a cause of action accrues upon the occurrence of a wrongful act resulting in injury for which the law provides a remedy. *Beauchamp v. Amedio,* 164 *N.J.* 111, 116, 751 *A.*2d 1047 (2000). Here the remedy is judicially ordered arbitration. The agreement to arbitrate, however, replaces the judicial order, rendering it unnecessary.

■ If plaintiff, in the absence of a repudiation of the agreement to arbitrate, had filed a complaint seeking to compel arbitration, she would have been seeking nothing more than that to which

defendant had already consented. Plaintiff fulfilled her obligation by demanding, and receiving an agreement to, arbitrate. In the absence of a repudiation, she was required to do no more to meet her obligation than to present her claim timely.

None of the cases to which we have been referred require a different result. Neither *Green v. Selective Ins. Co. of Am.*, *supra*, nor *Price v. New Jersey Mfrs. Ins. Co.*, *supra*, involved formal requests for arbitration, let alone an unrepudiated agreement to arbitrate, and are therefore inapplicable to this situation.

*Mortara v. Cigna Property and Cas. Ins. Co.*, 356 *N.J.Super.* 1, 811 *A.*2d 458 (App.Div.2001), *aff'd*, 174 *N.J.* 566, 811 *A.*2d 404 (2002) supports our conclusion. In that case, Mortara sought to compel Ohio Casualty to submit to UIM arbitration. After Ohio Casualty agreed to the demand, she voluntarily dismissed the complaint. "After the dismissal, instead of commencing arbitration, Ohio Casualty took the position that [another carrier] should be the primary source for plaintiffs' UIM benefits." *Id.* at 3, 811 *A.*2d 458. Mortara, thereafter, unsuccessfully attempted to secure an acknowledgement of responsibility from the other carrier. Six and one-half months before the statute ran, she was notified that neither carrier admitted coverage or the obligation to arbitrate. Nevertheless, Mortara failed to file suit to compel arbitration for almost one year after the statute had run and was held to be time-barred.

That result was compelled because there had been a repudiation by Ohio Casualty of its agreement to arbitrate by virtue of the denial "of coverage *within* the statute of limitations period...." *See Price v. N.J. Mfrs. Ins. Co.*, *supra*, 182 *N.J.* at 527, 867 *A.*2d 1181 (emphasis in original). The other carrier, of course, had never accepted an obligation to arbitrate. Here, there was no attempt by defendant to withdraw its recognition of its duty to arbitrate.

We think, for those reasons, the complaint should more properly have been considered an application to compel completion of the proceedings to which defendant had agreed. The proper analysis

involves consideration of whether plaintiff abandoned the arbitration or is otherwise prevented from pursuing it. The judge recognized those issues when she dealt with the application for the order to show cause. Nevertheless, she did not address, when dismissing the complaint, the "other defenses to the claim, such as the defense of failure to cooperate, ... estoppel, [or] laches in failing to proceed with the arbitration."

■ We agree that plaintiff may not delay indefinitely the arbitration simply by refusing to comply with discovery demands. To the extent she unduly delayed the presentation of her claim to the arbitrator and thereby prejudiced defendant, she may be estopped from seeking to compel defendant to complete the arbitration to which defendant previously agreed.

The controversy must be analyzed in terms of the reasons for the delay in presenting the matter, including the reasons for the inaction of the named arbitrators and their apparent failure to discharge the duties of their office. The analysis will also necessarily require an inquiry into the ability of plaintiff to comply with the discovery demands requested and whether there were extenuating circumstances that would excuse plaintiff's delay. The record suggests that plaintiff's counsel may have been ill and, under those circumstances, it may not be appropriate to penalize the client for the condition of counsel. *See Burns v. Belafsky,* 166 *N.J.* 466, 478, 766 *A.*2d 1095 (2001) ("[a]bsent demonstrable prejudice, 'it is neither necessary nor proper to visit the sins of the attorney upon his [or her] blameless client.' *Jansson v. Fairleigh Dickinson Univ.,* 198 *N.J.Super.* 190, 196, 486 *A.*2d 920 (App.Div. 1985); *see also Parker v. Marcus,* 281 *N.J.Super.* 589, 594, 658 *A.*2d 1326 (App.Div.1995).").

We recognize defendant's claims of prejudice, but plaintiff was elderly, apparently 94 years of age, and there are indications in the record that she suffered from dementia shortly after the accident, suggesting the delay in completing the arbitration may not have prejudiced defendant because plaintiff might have been unable to add to the medical records. We also note that defen-

dant, who had agreed to the arbitration, never sought to compel plaintiff to proceed, see *N.J.S.A.* 2A:24–3, or to ask the arbitrators to compel discovery or to set a hearing date. The arbitration here benefits both parties, and it may not be appropriate for defendant to simply wait while time passes and then complain of the lapse of time.

*Mitchell v. Alfred Hofmann Inc.,* 48 *N.J.Super.* 396, 137 *A.*2d 569 (App.Div.1958) considered a similar situation. That case dealt with the issue of "whether the plaintiff, by his failure to prosecute arbitration proceedings which had been instituted by him, has lost the right to arbitration by reason of laches or waiver." *Id.* at 399– 400, 137 *A.*2d 569. In that case, arbitration proceedings had begun and testimony had been last taken on December 26, 1946. Nothing further occurred, and on May 3, 1956, defendant's counsel, for the first time, advised that defendant would not consent to the reinstitution of the proceedings.

*Mitchell* did not have occasion to discuss the statute of limitations because, in that case, the complaint to compel arbitration was filed within the relevant statute. We have explained why we believe plaintiff here had timely instituted the arbitration process and, accordingly, the analysis used by the *Mitchell* court is instructive. That court considered whether the attempt to reconvene the arbitration after so long a delay constituted laches. It noted defendant, as much as plaintiff, had the right to move "before the arbitrators for a dismissal of the proceedings. Instead, they chose to adopt a policy of inaction, thus contributing to the delay and helping to create the situation of which they now complain." *Id.* at 404, 137 *A.*2d 569. The court also indicated that "it may be true that plaintiff caused the greater part of the delay ..., but the fact is that defendants never once requested him to proceed nor did they ever inform him that they would insist upon prompt action in the future." *Ibid.*

We recognize the factual differences between *Mitchell* and this case. Although the arbitration in *Mitchell* was much more advanced than here, in both cases the arbitration had begun. It has

been held in analogous situations that the participation of a party in arbitration proceedings, absent an objection, constitutes a waiver of objections. *See* Eleanor L. Grossman, Annotation, *Participation in Arbitration Proceedings as Waiver of Objections to Arbitrability Under State Law,* 56 *A.L.R.* 5th, 757 (2006).

Accordingly, we view the dispute here not as to whether plaintiff timely sought arbitration. She did. Rather, we take this to be a question of whether plaintiff has failed sufficiently to prosecute the arbitration so as to forfeit her right to pursue it further. Accordingly, we remand for consideration of that issue. On remand, the court should be mindful of the instruction in *Mitchell, supra,* that defendant's contribution to the delay may bar an objection to further proceeding. *Id.* at 403, 137 *A.*2d 569.

Reversed and remanded for further proceedings consistent with this opinion.