**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2039-22

CONCETTA PEREIRA,

    Plaintiff-Appellant,

v.

NEW JERSEY
MANUFACTURERS INSURANCE
COMPANY,

    Defendant-Respondent.

_____

> Argued November 28, 2023 – Decided January 3, 2024
>
> Before Judges Whipple, Enright and Paganelli.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-0945-21.
>
> Kevin Carter Corriston argued the cause for appellant (Breslin and Breslin, PA, attorneys; Kevin Carter Corriston, on the briefs).
>
> Daniel J. Pomeroy argued the cause for respondent (Pomeroy, Heller, Ley, DiGasbarro & Noonan, LLC, attorneys; Daniel J. Pomeroy and Karen E. Heller, on the brief).

PER CURIAM

Plaintiff Concetta Pereira appeals from a February 8, 2023 trial court order granting defendant's, New Jersey Manufacturers Insurance Co. (NJM), motion for summary judgment. We affirm.

I.

We glean the facts and procedural history from the motion record. On September 10, 2014, plaintiff was a passenger in an automobile that was struck from behind by another automobile. Plaintiff sustained injuries and sought payment from the other automobile's liability insurance provider.

On February 13, 2017, plaintiff's attorney sent a letter to NJM, plaintiff's automobile insurance provider. The letter advised of the attorney's representation regarding the injuries sustained in the accident. The letter also advised that "plaintiff intend[ed] to issue a release . . . in the amount of $15,000.00," the maximum of the other automobile's liability policy. The letter further provided that because plaintiff's insurance policy had a "$500,000.00 underinsured [motorist] (UIM) provision[,]" she would be "looking to [NJM] to provide [her] with additional settlement monies."

A-2039-22

On February 24, 2017, NJM sent a letter to plaintiff's attorney authorizing her to "accept the tortfeasor's settlement offer [of $15,000.00]." The letter also warned plaintiff:

> Please be aware that NJM intends to rely on Statute of Limitations [(SOL)] as a defense in this matter and that the accrual of the [SOL] date will preclude any UIM claim. Any investigation, communications or other actions taken by NJM will not serve to toll the [SOL] period unless waived in writing.

Through the ensuing years, NJM representatives and plaintiff's attorney cooperated and communicated about the claim. Plaintiff's attorney provided requested information when it became available and plaintiff submitted to a NJM medical evaluation on April 25, 2018.

In the meantime, plaintiff's attorney sought a narrative report from Patrick Roth, M.D. (Dr. Roth), plaintiff's "sole treating physician." Plaintiff's attorney first sought a report on September 21, 2017. Dr. Roth provided the first iteration of the report on April 15, 2019. Plaintiff's attorney noted "significant inconsistencies" which led plaintiff's attorney and plaintiff to seek a "corrected" report. The back-and-forth between plaintiff, plaintiff's attorney and Dr. Roth's office lasted until November 17, 2020 when plaintiff's attorney was provided with a presumably acceptable report. Plaintiff's attorney provided the report to NJM three days later.

A-2039-22

On December 29, 2020, plaintiff filed a notice of motion to toll the six-year SOL. On February 5, 2021, the judge issued an order denying plaintiff's motion "without prejudice pending discovery[,]" and instructed plaintiff to "file a [c]omplaint against [NJM] . . . within fourteen (14) days . . . ." Plaintiff filed a complaint on February 10, 2021. NJM filed an answer on April 28, 2021.

After concluding discovery, NJM moved for summary judgment to dismiss plaintiff's complaint and to "declar[e] that [NJM] ha[d] no obligation to provide [UIM] insurance benefits for alleged injuries sustained by plaintiff as a result of the September 10, 2014 accident . . . ." The judge heard the parties' arguments and issued a written opinion on February 8, 2023 granting NJM's motion for summary judgment.

## II.

On appeal, plaintiff avers that the judge erred in granting summary judgment because the SOL should be equitably tolled since: (1) NJM had notice of the plaintiff's UIM claim and was not prejudiced in the continuation of litigation; and (2) the judge made a factual error in finding the last communication between the parties was six, rather than four, months before the SOL expired. We disagree.

"The standard of review of a trial court's grant of a motion for summary judgment is de novo, using the same standard as that employed by a trial court." Hinton v. Meyers, 416 N.J. Super. 141, 146 (App. Div. 2010) (citing Turner v. Wong, 363 N.J. Super. 186, 198-99 (App. Div. 2003)). "Whether a cause of action is barred by a [SOL] is a question of law, [which is] also reviewed de novo." Catena v. Raytheon Co., 447 N.J. Super. 43, 52 (2016).

A.

Plaintiff contends the SOL should be equitably tolled because she "notified [NJM] of the claim . . . and [NJM] . . . was not . . . unfairly prejudiced in the claim being litigated."

A six-year SOL applies to UIM claims, and the statute begins to run from the date of the accident. Green v. Selective Ins. Co. of Am., 144 N.J. 344, 354 (1996). Therefore, absent some relief, plaintiff's filing—December 29, 2020—after the six-year anniversary of the accident—September 10, 2020—would bar her claim.

"The primary purpose of the [SOL] is to provide defendants a fair opportunity to defend and to prevent plaintiffs from litigating stale claims." W.V. Pangborne & Co., v. N.J. Dep't of Transp., 116 N.J. 543, 563 (1989) (citing

Ochs. v. Fed. Ins. Co., 90 N.J. 108, 112 (1982); O'Keeffe v. Snyder, 83 N.J. 478, 490-91 (1980)).

Therefore, "[an SOL] may be equitably tolled [only] under very limited circumstances . . . ." Barron v. Gersten, 472 N.J. Super. 572, 577 (App. Div. 2022) (quoting F.H.U. v. A.C.U. 427 N.J. Super. 354, 379 (App. Div. 2012)). "Absent a showing of intentional inducement or trickery by a defendant, [equitable tolling] . . . should be applied sparingly and only in the rare situation where it is demanded by sound legal principles and in the interest of justice." Ibid. (quoting Binder v. Price Waterhouse & Co., LLP, 393 N.J. Super. 304, 313 (App. Div. 2007) (quoting Freeman v. State, 347 N.J. Super. 11, 31 (App. Div. 2002))).

"Equitable tolling, which 'affords relief from inflexible, harsh or unfair application of a[n SOL],' does not excuse claimants from exercising the reasonable insight and diligence required to pursue their claims." Freeman v. State, 347 N.J. Super. 11, 32 (App. Div. 2002) (quoting Villalobos v. Fava, 342 N.J. Super. 38, 45 (App. Div. 2001)). "Plaintiffs have a duty to diligently pursue their claims." Id. at 31-32.

In Price v. N.J. Mfrs. Ins. Co., 182 N.J. 519 (2005), the New Jersey Supreme Court held that when an insurance company "violate[s] the duty of

6

good faith and fair dealing," id. at 526; implied in every insurance contract, ibid.; "equitable principles [will] bar [the insurance company] from raising a[n SOL] defense," id. at 521. There "[t]he undisputed facts . . . support[ed] equitable tolling of the [SOL]," id. at 525, because: (1) the insurance company "received various information necessary to evaluate plaintiff's claim, including a medical examination of plaintiff," ibid.; (2) "[p]laintiff met each of [the insurance company's] requests," ibid.; (3) the insurance company's "last request was . . . nine days before the expiration of the [SOL]," ibid.; (4) "[p]laintiff's counsel responded with most of the last requested information [after the SOL expired] and thereafter continued to forward, upon receipt," id. at 526; and (5) "[i]t was not until . . . more than a year after the statute would have otherwise run, that [the insurance company] notified plaintiff that the [SOL] barred his claim," ibid.

Under these circumstances, the insurance company "was required to . . . inform plaintiff if there were any deficiencies in his claim or if he needed to file a request for arbitration by a certain date," ibid; and could not "sit back, request and receive various documents over a three and one-half year period, and then deny plaintiff's claim because he failed to file a complaint in the Superior Court or request arbitration prior to the running of the six-year [SOL],"

7

<u>ibid.</u> The Court determined that the insurance company's "conduct lulled plaintiff and his counsel into believing that the [UIM] claim had been properly filed." <u>Id.</u> at 527.

Plaintiff argues NJM had notice and is not prejudiced, and, therefore, the SOL should not be "appl[ied] mechanistically" or "strict[ly] adhere[d] to." Citing <u>Price</u>, plaintiff avers "in such cases, courts can apply equitable principles to toll the [SOL] to ensure a just result." <u>Id.</u> at 525. We are not persuaded. Plaintiff's argument too broadly interprets <u>Price</u> and effectively dispenses with the SOL. "A claim must be commenced by filing a complaint and is not commenced by writing letters or negotiating with one's adversary." <u>Mortara v. Cigna Property & Cas. Inc. Co.</u>, 356 N.J. Super. 1, 3-4 (App. Div. 2001).

Further, we conclude that <u>Price</u> is distinguishable from the matter at bar. Importantly, as early as February 24, 2017, NJM warned plaintiff's attorney that it would rely on the SOL. The letter explained:

> Please be aware that NJM intends to rely on [SOL] as a defense in this matter and that the accrual of the [SOL] date will preclude any UIM claim. Any investigation, communications or other actions taken by NJM will not serve to toll the [SOL] period unless waived in writing.

NJM notes it never "at any point, waive[d] the [SOL] as a defense in writing, or by any other means." Moreover, here NJM immediately denied plaintiff's belated claim, it did not wait more than a year to assert that the claim was barred.

We conclude there is no basis to equitably toll the SOL. Simply, plaintiff filed her claim after the expiration of the SOL and, therefore, the claim is barred.

B.

Plaintiff contends "the [judge] erred in finding a gap in communication [between the parties] in the six months before the [SOL] expired." Plaintiff avers "the last [NJM] file notation [was entered] on May 7, 2020, four (4) months prior to the [SOL]."[1]

In response, NJM argues "even accepting that there was an additional contact made with NJM in May of 2020 . . . plaintiff does not even suggest in what way this 'fact' would support a different result than was reached by the [trial] court."

The judge's purported factual error was not raised with him and is raised for the first time on appeal. Rule 2:10-2 provides:

> Any error or omission shall be disregarded by the
> appellate court unless it is of such a nature as to have

_____

[1] Rule 2:6-2(a)(5) requires "[a] concise statement of facts material to the issues on appeal supported by references to the appendix and transcript." Here, plaintiff failed to provide a "reference[] to the appendix and transcript."

9

been clearly capable of producing an unjust result, but the appellate court may, in the interests of justice, notice plain error not brought to the attention of the trial or appellate court.

"Relief under the plain error rule, Rule 2:10-2, at least in civil cases, is discretionary and 'should be sparingly employed.'" Baker v. Nat'l State Bank, 161 N.J. 220, 226 (1999) (quoting Ford v. Reichert, 23 N.J. 429, 435 (1957)). Further, the rule sets "a 'high bar,' requiring reversal only where the possibility of an injustice is 'real' and 'sufficient . . . .'" State v. Alessi, 240 N.J. 501, 527 (2020) (first quoting State v. Santamaria, 236 N.J. 390, 404 (2019); and then quoting State v. Macon, 57 N.J. 325, 326 (1971)).

The motion judge determined:

> there were only two contacts by [NJM] in 2020. They occurred in January and April 2020. For approximately six months before the expiration of the [SOL] there was no contact at all. The facts . . . do not paint a scenario where equitable estoppel is viable. Here the facts do not support a claim that the plaintiff was lulled into not filing suit. While there was certainly a course of dealing between plaintiff and NJM[,] such interaction, in and of itself, is an insufficient basis to waive the [SOL]. NJM specifically advised counsel for plaintiff that it was not waiving the [SOL]. Furthermore, the lack of any contact for six months before the running of the [SOL] belies a claim that plaintiff was lulled into believing that there was no necessity to file suit[].

10

Even if we were to find the judge erred, and an additional contact occurred, narrowing the communication gap from six to four months before the expiration of the SOL, plaintiff fails to explain how that error was "clearly capable of producing an unjust result." R. 2:10-2. Plaintiff's lack of explanation prevents it from clearing the high bar for relief. Alessi, 240 N.J. at 527.

Moreover, we conclude that the two-month difference "was not clearly capable of producing an unjust result." Willner v. Vertical Reality, Inc., 235 N.J. 65, 79 (2018) (quoting R. 2:10-2). The importance of the timing of the parties' last communication stems from the Court's concern, in Price, that there was a request for information only nine days before the SOL expired. Price, 182 N.J. at 525. That late interaction, among a myriad of other facts, led the Court to conclude the plaintiff had been lulled into believing the insurance company was not going to assert a SOL defense. Here, however, as we explained, NJM warned plaintiff that it was relying on the SOL and never waived that defense. Therefore, whether the last communication was six or four months before the expiration of the SOL would not lead to a conclusion that plaintiff was lulled by NJM to believe that she did not have to timely file suit.

11

To the extent we have not addressed the plaintiff's other arguments, we deem them without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2039-22