**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1050-22

EAST COAST WALL SYSTEMS,
LLC,

    Plaintiff-Appellant,

v.

TKT CONSTRUCTION CO., INC.,

    Defendant-Respondent.

_____

Argued January 30, 2024 – Decided March 7, 2024

Before Judges Mayer and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-2453-22.

Samuel Brad Fineman argued the cause for appellant (Cohen Fineman, LLC, attorneys; Lynn Merle Cohen, on the brief).

Matthew L. Erlanger argued the cause for respondent (Cohen Seglias Pallas Greenhall & Furman, PC, attorneys; George E. Pallas and Matthew L. Erlanger, on the brief).

PER CURIAM

In this breach of contract case, plaintiff East Coast Wall Systems, LLC (EC) appeals from an October 24, 2022 order denying its order to show cause and granting a motion filed by defendant TKT Construction Co. Inc. (TKT) to dismiss EC's complaint with prejudice. We affirm.

I.

In April 2015, the parties executed a contract naming EC as one of TKT's subcontractors on a municipal project in Hammonton (Project). Under the contract, EC agreed to perform certain stucco and joint sealant work. The contract provided that "[a]ny controversy or claim between [the parties] arising out of or related to th[e s]ubcontract, or the breach thereof, shall be settled by arbitration."

After EC began work on the Project, a payment dispute arose between the parties. EC claimed it was owed $22,089.75 but TKT argued "back charges" assessed against EC totaling $8,800 offset any sum TKT owed EC. On July 30, 2015, EC filed a notice of municipal mechanics' lien claim stating TKT owed EC $22,089.75 as of July 16, 2015.

Around this same time, the New Jersey Division of Labor and Workforce Development (DOL) commenced an investigation regarding payments EC made to a subcontractor on the Project who was mistakenly identified as EC's

2

employee. Because the Project was a public work project, it implicated prevailing wage rates.[1] Accordingly, counsel for TKT emailed EC's counsel on May 6, 2019, stating, "from TKT's perspective, the DOL's letter with exculpatory language as it pertain[ed] to TKT and th[e] [P]roject [wa]s a precondition to payment in any amount."

In March 2022, EC resolved its issues with the DOL; it memorialized its settlement with the State in June 2022. On August 1, 2022, EC's counsel emailed TKT's counsel to ask if TKT would "consent to arbitrate" the parties' existing payment dispute. The next day, TKT's counsel responded that "TKT [wa]s not agreeable to arbitration and w[ould] oppose any attempt by [EC] to compel an arbitration at th[at] time."

---

[1] The Prevailing Wage Act, N.J.S.A. 34:11-56.25 to -56.47 declares, in part, that:

> the public policy of this State [is] to establish a prevailing wage level for work[ers] engaged in public works in order to safeguard their efficiency and general well[-]being and to protect them as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to efficiency and well-being.
>
> [N.J.S.A. 34:11-56.25.]

A-1050-22

Later that month, plaintiff filed a complaint and order to show cause, seeking to compel TKT's participation in arbitration to address EC's claim that TKT owed EC $22,089.75. In October 2022, TKT filed a cross-motion to dismiss the complaint, arguing EC's contractual claims were barred under the six-year statute of limitations (SOL), pursuant to N.J.S.A. 2A:14-1.

The trial court heard argument on the parties' cross-applications on October 21, 2022. During argument, EC's counsel contended the six-year SOL should be equitably tolled so arbitration could proceed. She explained that TKT's May 6, 2019 email "le[d EC] down a primrose path" by stating EC "ha[d] to resolve . . . [its] DOL issue" before the parties could "get to the meat of [their] contractual dispute. And [EC] relied on that" email.

TKT's counsel opposed the equitable tolling of the SOL, contending EC failed to show some "sort of inducement or . . . trickery that . . . cause[d]" EC to let the SOL expire before seeking to arbitrate the parties' dispute. TKT's counsel also asserted the May 6, 2019 email "did[ not] induce anybody to do anything," and merely notified EC that TKT would "not pay[] anything while th[e DOL] investigation [wa]s ongoing."

4

When the trial court asked if EC's counsel had any documents "other than the May 6[], 2019 e[]mail" to support her estoppel argument, EC's counsel admitted she did not. She then stated:

> There is . . . this idea, and it's somewhat untested in New Jersey, . . . [but] it's th[e] idea that the [SOL] doesn't actually apply to arbitration. . . .
>
> So there's this growing trend in the country . . . that the [SOL is] only applicable to actions of law . . . . And this isn't really an action at law. It's arbitration.
>
> . . . .
>
> So there is the argument that the [SOL] doesn't apply at all to this matter.

On October 24, 2022, the judge denied EC's order to show cause and granted TKT's motion to dismiss with prejudice. In a written opinion accompanying the October 24 order, the judge cited N.J.S.A. 2A:14-1[2] and concluded EC's cause of action against TKT accrued "on July 16, 2015[,] as clearly set forth in [EC]'s notice of mechanics['] lien." Therefore, the judge found:

_____

[2] N.J.S.A. 2A:14-1(a) states, in part, "[e]very action at law for . . . recovery upon a contractual claim or liability, express or implied, . . . shall be commenced within six years next after the cause of any such action shall have accrued."

A-1050-22

[EC] was required to demand arbitration and or file the subject complaint on or before July 16, 2022.[3] The first mention of arbitration in the record . . . [wa]s August 1, 2022. Although . . . the parties . . . were exchanging communications in 2015, nothing in those communications mention[ed] anything about engaging in or demanding arbitration. Therefore, th[e] court is compelled to find that even after giving [EC] all reasonable inferences, the first demand for arbitration . . . was made on August 1, 2022[,] which is . . . after expiration of the applicable [SOL].

Additionally, the judge rejected EC's request to invoke the doctrine of equitable estoppel to toll the SOL, finding "the undisputed facts . . . in the record d[id] not meet the elements required to invoke equitable estoppel." The judge explained that EC produced no evidence showing TKT "lulled . . . [EC] into believing it would resolve the [payment] issues . . . even after the SOL expired." Further, the judge explicitly rejected EC's contention that "equitable estoppel should attach based on [TKT]'s statement [in the May 6, 2019 email] that the conclusion of the DOL investigation was a 'precondition as to payment of any amount.'" He determined this email "did not specifically state nor infer that

_____

[3] On December 19, 2022, the judge submitted an amplified decision pursuant to Rule 2:5-1(b) to correct "a simple math . . . error." He stated he "mistakenly found . . . the six-year [SOL] . . . tolled on July 16, 2022," but "[b]ased on the finding that the statute began to run on July 16, 2015, the [SOL] should have been found to [expire] on July 16, 2021."

A-1050-22

[TKT] was willing to resolve the matter or engage in arbitration[,] nor was the [email] one which would induce reliance to [EC]'s detriment."

Finally, the judge concluded:

> [i]n using reasonable diligence[, EC] could have demanded arbitration immediately after the July 2015 letters between [the parties] failed to [effectuate] any agreement. [EC] could have filed [for] arbitration or demanded [it] as early as the end of July 2015 or thereafter[,] and had the arbitration stayed until the completion of the DOL investigation[,] or could have proposed a tolling agreement to protect its interest. [EC] did none of these things.
>
> In addition, the DOL investigation concluded in March 2022 . . . . No arbitration was filed[,] and no mention of an arbitration demand came until August 1, 2022[,] when [EC]'s counsel requested such via email[,] which was beyond the date required by the SOL.
>
> The court is not unmindful of the equity considerations that are apparent . . . and the seemingly undisputed amount owed by [TKT,] . . . but the . . . facts in this matter do not call for the invocation of an extension of the SOL [or] . . . require . . . [TKT] to submit to arbitration.

After EC appealed from this decision, it provided a copy of its Notice of Appeal and appellate Case Information Statement (CIS) to the judge. The judge issued a December 19, 2022 amplification letter, stating not only that the SOL expired on July 16, 2021, but his amended decision was "arguably stronger" than his October 24, 2022 decision because it was clear EC waited more than a year

after the SOL expired to ask the court to compel TKT to submit to arbitration. Further, the judge noted that although EC's appellate CIS reflected an argument that the SOL "for written contracts applies to civil actions at law only, and not arbitration," this "was not an argument [EC] raised before the trial court."

## II.

On appeal, EC advances two arguments. First, it contends the judge erred in dismissing its complaint and order to show cause court as time barred because the six-year SOL set forth in N.J.S.A. 2A:14-1 "applies to civil actions at law only, and not arbitration as defined by private contracts between parties." Second, EC argues the judge erred in finding TKT's "May 6, 2019 email . . . [wa]s not a tolling agreement such that the [SOL] was tolled on June 8, 2022," i.e., when EC executed its settlement agreement with the DOL. These arguments fail.

We review the grant of a Rule 4:6-2(e) motion to dismiss for failure to state a claim upon which relief can be granted de novo. Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)). Therefore we "examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of

fact.'" Ibid. (quoting Dimitrakopoulos, 237 N.J. at 107). In undertaking this examination, we recognize "a dismissal with prejudice is 'mandated where the factual allegations are palpably insufficient to support a claim upon which relief can be granted,' or if 'discovery will not give rise to such a claim.'" Mac Prop. Grp. LLC & The Cake Boutique LLC v. Selective Fire & Cas. Ins. Co., 473 N.J. Super. 1, 17 (App. Div. 2022), (first quoting Rieder v. State, 221 N.J. Super. 547, 552 (App. Div. 1987) then quoting Dimitrakopoulos, 237 N.J. at 107), certif. denied, 252 N.J. 258 and 252 N.J. 261 (2022).

A breach of contract action must be commenced within six years of the accrual of the cause of action. N.J.S.A. 2A:14-1(a). "[T]he purpose of [SOLs] is to protect defendants from unexpected enforcement of stale claims by plaintiffs who fail to use reasonable diligence in prosecuting their claims." Est. of Hainthaler v. Zurich Com. Ins., 387 N.J. Super. 318, 327 (App. Div. 2006) (quoting LaFage v. Jani, 166 N.J. 412, 423 (2001)).

"[T]he doctrine [of equitable tolling of an SOL] should be applied sparingly and only in the rare situation where it is demanded by sound legal principles and in the interest of justice." Freeman v. State, 347 N.J. Super. 11, 31 (App. Div. 2002).

> Equitable tolling has generally been applied in three circumstances:

(1) [where] "the complainant has been induced or tricked by [an] adversary's misconduct into allowing the filing deadline to pass"[;]

(2) where a plaintiff has "in some extraordinary way" been prevented from asserting [their] rights [and;] . . .

(3) where a plaintiff has timely asserted [their] rights mistakenly by either defective pleading or in the wrong forum.

[Binder v. Price Waterhouse & Co., L.L.P., 393 N.J. Super. 304, 313 (App. Div. 2007) (first alteration and omission in original) (quoting Freeman, 347 N.J. Super. at 31).]

"[E]quitable tolling requires [claimants] to 'diligently pursue their claims' because although it 'affords relief from inflexible, harsh or unfair application of a[n SOL],' [it] does not excuse claimants from exercising the reasonable insight and diligence required to pursue their claims." Id. at 313 (fourth alteration in original) (quoting Freeman, 347 N.J. Super. at 32).

It also is well established that we do not consider arguments which were "not properly presented to the trial court when an opportunity for such a presentation [wa]s available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (quoting State v. Robinson, 200 N.J. 1, 20 (2009)). Additionally, the mere mention of an issue at oral argument before

10

the trial court does not require an appellate court to address it.  See Selective Ins. Co. of Am. v. Rothman, 208 N.J. 580, 586 (2012).  Moreover, an issue not argued in a brief before the trial court is deemed abandoned.  See Noye v. Hoffman-La Roche Inc., 238 N.J. Super. 430 432 n.2 (App. Div. 1989) (citing Matter of Bloomingdale Conval. Ctr., 233 N.J. Super. 46, 48 n.1 (App. Div. 1989)) (explaining we need not decide an issue that the party did not brief, but raised for the first time during oral argument).

Guided by these principles, we have no basis to disturb the October 24, 2022 order.  Putting aside the fact EC made no formal demand for arbitration, but instead, sought to compel arbitration via court order, we note the record is devoid of evidence that before the October 21, 2022 hearing, EC submitted any filing with the trial court arguing the SOL under N.J.S.A. 2A:14-1 "applies to civil actions at law only, and not arbitration as defined by private contracts between parties."  Further, during the October 21 hearing, EC's counsel simply mentioned an "idea" that she "recently . . . read[] about" which was "somewhat untested in New Jersey" "and it[ was] th[e] idea that the [SOL] d[id not] actually apply to arbitration."  This "idea" was referenced only after the judge allowed EC's counsel to supplement her equitable estoppel argument.  Thus, any

contention that N.J.S.A. 2A:14-1 does not apply to arbitrations was not properly preserved for appellate review.

Even if EC had formally briefed this statutory argument before the October 21 hearing, it failed to cite any binding authority to support this argument. Likewise, on appeal, EC points to no binding precedent to support its contention. Under these circumstances, we decline to conclude the judge erred in finding the SOL under N.J.S.A. 2A:14-1 barred EC's belated request for arbitration. See, e.g., Green v. Selective Ins. Co. of Am., 144 N.J. 344, 353 (1996).[4]

Similarly, we discern no reason to disturb the judge's determination that the May 6, 2019 email did not provide a basis for the court "to invoke the

---

[4] In Green, the plaintiff sought arbitration of his claim against Selective Risks Insurance Company (Selective) more than seven years after he was injured in a motor vehicle accident. 144 N.J. at 348. Selective claimed the SOL barred Green's claim and refused to arbitrate. The trial court granted Selective's motion for summary judgment and dismissed Green's complaint, finding it was barred by the SOL applicable to contract claims, and that the SOL started to run as of the date of the accident. Ibid. We affirmed, but not based on the SOL. Ibid. The Supreme Court reversed our decision and reinstated Green's complaint. Ibid. However, the Court did not disagree that the SOL under N.J.S.A. 2A:14-1 applied to arbitration. Instead, it reversed on different grounds, prospectively holding "for the first time" that the SOL started running on the date of the motor vehicle accident. Id. at 352, 354. The Court also cited, with approval, Craig & Pomeroy, New Jersey Auto Insurance Law, § 23-1(b) (1996), which "observe[d] that [uninsured motorists] claimants must raise their demand for arbitration within six years of [a motor vehicle] accident." Id. at 353.

A-1050-22

doctrine of equitable estoppel."  Nor do we have any basis to second-guess the judge's finding that "[i]n using reasonable diligence[, EC] could have demanded arbitration" before July 16, 2021.  As the judge correctly noted, the record before the trial court was devoid of evidence showing TKT "lulled . . . [EC] into believing it would resolve the [payment] issues . . . even after the SOL expired." Rather, as the judge correctly found, TKT "always contested the amount [EC] claimed" it was due, and TKT's May 6, 2019 email was not a statement that "would have reasonably induced [EC] to its detriment."

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1050-22